MARTINDALE *v.* WAAS and another.

(*Circuit Court, D. Minnesota.*  September, 1881.)

1. CONTRACTS—TIME NOT OF THE ESSENCE.
    Time is not of the essence of a contract to convey real estate, in the absence of any express provision.
2. SAME—CONCURRENT CONDITIONS.
    When, in an agreement for the sale of real estate, the same day has been fixed for the payment of the money and the delivery of the deed, the two sides of the contract will be mutual and concurrent conditions.
3. SAME—TENDER OF PERFORMANCE.
    The expression of a willingness to give a deed is not a sufficient tender of performance where the agreement was to give a deed and also assign an interest in a lease.

Suit brought to enforce specific performance of a contract for the sale of real estate.

*A. F. Scott,* for complainant.

*A. F. Foster,* for defendants.

FACTS.

NELSON, D. J.   The defendants, on January 23, 1880, entered into a written contract for the conveyance to complainant of the south half of a lot, designated on the government plat as lot No. 7, in the W. $\frac{1}{2}$ of section 5, township 28, range 23, together with water-rights, etc.   John Waas negotiated the sale.   The land was supposed to contain 18.25 acres, and the complainant agreed to pay $121.92 per acre..   The defendants were to have the land surveyed, and proper monuments placed, so as to show the quantity sold, and a suitable plat or map made and a copy furnished the complainant, and the quantity of land shown by the survey was to be paid for, whether more or less than 18.25 acres.

The defendants also agreed that their two daughters should execute to complainant a quitclaim deed of the premises sold, containing a grant of right of way for public streets or avenues running northerly and southerly through the north and south half of said lot, as the complainant might desire.   They also agreed to assign over to the complainant 67-150, the share in a lease given to one Hans Johnson, of the premises sold, with adjoining lands, in which lease Johnson agreed to pay a rental of $150 per annum.   The complainant paid $100 down on January 23d, when the contract was executed, and the balance was to be paid on February 6, 1880, upon the fulfilment, by defendants, of the provisions which were agreed to, and the execution

and delivery of the deed, which was to be done at the same time, at the complainant's residence in Minneapolis. The conveyance was to be a full covenant warranty deed, and the defendants stipulated and agreed that the title should be free and clear from all encumbrances. At the time the contract was executed the land had been sold on foreclosure for default of an instalment of interest on a mortgage, and the time for redemption expired February 20, 1880, but the defendants paid the instalment before the time expired.

The land was surveyed and platted, and found to contain 17.82 acres. The daughters of the defendants were absent from home until after the sixth of February, and had previously refused, as testified to by their father, to sign any papers, and it was mutually agreed to await their arrival. There is a conflict of testimony whether it was the fifth or seventh of February when it was so agreed, but the date is immaterial in the view taken by the court. There were one or more interviews between John Waas and the complainant, either on the streets of Minneapolis, at the complainant's residence, or in John Waas' office, about the delivery of a deed from the daughters, who still refused to execute it. On the thirteenth of February John Waas visited the complainant's house. There is a conflict in the testimony as to what occurred at that interview. John Waas testifies that he offered to give a warranty deed of the land, and that was all he could give and the only way to settle it. He admits that he had no deed with him, and none had been executed, but he says one was ready to be drawn, and his wife was ready to sign it. The complainant's testimony is that Waas told him that he would bring such a deed, and also a quitclaim deed to the city for streets, etc., and that he, the complainant, told Waas that he must fulfil his contract without further delay. The difference in the testimony is not important.

There was another interview on the nineteenth or twentieth of February in Waas' office. At that time Mrs. Meader was present, who held a mortgage on the land given by Waas and wife. This appointment must have been made with a view to close up the business, and the testimony of the complainant to that effect is not denied by Waas, and is corroborated by Mrs. Meader. At that time Waas offered to give a warranty deed, but the complainant declined to accept such a deed in satisfaction, and was anxious about the right of way for streets. After some conversation and suggestions, it was thought the daughters would make a deed to their father. The amount due Mrs. Meader on her mortgage was computed, and she

was present expecting payment, and when Waas thought his daughters would execute the deed for streets, etc., to himself, the parties separated to finish the business, and Waas and Mrs. Meader went to Jackson's office to have him draw a satisfaction piece and quitclaim deed. When the interview at the office of Waas closed, he said he would notify the complainant to go to the court-house when he was ready. The complainant was not notified, and no other interview took place until some time in March, when Mrs. Meader commenced a foreclosure suit, making the complainant a party; and about that time John Waas testifies, and it is not denied by any one, that he went to complainant, and, to use his own language: "I told him (complainant) I had offered him a clear warranty deed for the south half of lot 7, and he had refused to accept it, and the time had passed for the redemption of the land and I rescinded the contract on authority from my wife."

On April 10th and 22d complainant made a tender of the money and demanded a warranty deed, and stated that he waived his right to streets. The tender included interest on the amount due from February 6, 1880, less the $100 paid down on the execution of the contract. The defendants refused to perform, and the suit was instituted in the district court of Hennepin county and removed to this court.

The suit brought by Mrs. Meader resulted in a decree of foreclosure, and the complainant was purchaser at the sale.

### CONCLUSIONS.

1. Time is not the essence of this contract. The covenants are mutual and concurrent, and Wass and wife could not claim payment without a tender of performance. The agreement to procure a deed for streets, so that the complainant might have right of way through land owned by the daughters, does not prevent a court of equity from enforcing a performance of the substantial part of the contract, which defendants are able to perform. The substantial part of the contract was the bargain and sale of the land and assignment of a part of the Hans Johnson lease; and if any damage resulted from the fact that the defendants could not procure a deed for right of way, etc., from their daughters, there is ample power in a court of equity to do justice by way of decreeing compensation to the complainant.

2. There was no sufficient tender of performance by defendants which would require the complainant to fulfil on his part. They had agreed to give a warranty deed of the land and an assignment

of an interest in the lease, and there never was anything more done than a willingness expressed by Waas to give a deed. He never, at any interview, offered to assign the part interest in the lease as agreed upon.

3. The fact that the complainant was ready to pay for 18 acres, when only 17.82 acres was the measurement, does not change the contract. All that the complainant could claim the deed should give him was 17.82 acres, and there is not sufficient proof of any change in the contract, except an extension of the time for payment.

4. The evidence is clear that complainant made a tender of the balance of the purchase price on April 10th to Waas, and on the twenty-second to Mrs. Waas, and demanded a deed from them, waiving all claim to the deed from the daughters. The tender to John Wass was sufficient. He negotiated the sale and was the agent of his wife, as is established by the evidence.

5. There is no evidence that any damage is sustained by failure of the daughters to deed the right of way for streets, and none can be recovered. In fact, the complainant waived all his rights thereto.

6. While *gross* inadequacy of consideration may justify a court of equity in refusing to enforce the performance of a contract, there is not such inadequacy of consideration in this case. The value of the land is claimed by the defendants to have been $150 per acre at the time the contract of sale was made, and the price to be paid was $121.92.

7. There was no effective rescission of the contract by the defendants and no right to rescind.

8. The complainant, by his purchase at the foreclosure sale, is entitled to have the amount paid by him offset *pro tanta* in liquidation of the balance due the defendants under the contract. A reference is ordered to H. E. Mann to ascertain the balance due defendants after the complainant is credited with this amount, and the costs of this suit, which shall also be ascertained by said master; and upon the coming in and confirmation of said master's report a decree will be entered directing and requiring the defendants to execute a deed to complainant for the 17.82 acres described by metes and bounds as platted, and also an assignment of the lease, as required by said written contract, on payment of the balance found due by the master; and it shall provide that if the defendants do not, immediately after the balance is ascertained as aforesaid, make and tender such conveyance, the decree shall stand for a deed, when signed and entered, upon payment into the registry of this court of the balance so found due the defendants.